IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:21-CV-00070-KDB-DSC

PATRICIA ANN SHUPE and
DAVID ALLEN MASON,

        Plaintiffs,

v.

LEN D. HAGAMAN,
ADAM SHANE GRAGG, and
CNA SURETY CORPORATION,

        Defendants.

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on two Motions to Dismiss Plaintiffs' First Amendment Complaint, the "Rule 12(b)(6) Motion to Dismiss First Amended Complaint of Defendants Sheriff Len D. Hagaman and Adam S. Gragg" (document # 24) and the "Motion to Dismiss First Amended Complaint by Defendant Adam Shane Gragg in his Individual Capacity" (document # 27), both filed on July 15, 2021.

These Motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and are now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authorities, the undersigned respectfully recommends that both Motions be *granted in part* and *denied in part* as discussed below.

### I.    Procedural and Factual Background

This is an action seeking damages pursuant to 42 U.S.C. § 1983 for violations of Plaintiffs' decedent Andrew John Mason's constitutional right to be free from excessive force. Plaintiffs also

bring state law negligence claims and a statutory claim under N.C. Gen. Stat. § 58-76-5 for action on the Sheriff's bond.

Accepting the factual allegations of the First Amended Complaint as true, at around 11 p.m. on March 30, 2019, dispatchers received two phone calls about a man screaming and walking up and down Hardin Road in Watauga County. One of the callers reported that he appeared to be "really off on drugs." No one reported that the man used or threatened violence, possessed a weapon, or had committed a crime. Two deputies were dispatched to the scene and advised that the man in question seemed to be under the influence of some type of substance and was knocking on doors trying to gain entry. He was described as a white male with very blond neck length hair. Defendant Adam S. Gragg was the first deputy to arrive at the scene. He observed a man matching the description, later identified as Andrew John Mason, walking down the roadway. Mason lived near the scene.

As Gragg got out of his vehicle, Mason was walking down the roadway away from him. Gragg held a flashlight in his left hand and a taser in his right. Both were pointed at Mason. After Gragg said something to Mason, Mason turned back toward Gragg. He appeared confused and disoriented. Gragg continued to point his taser and flashlight at Mason as Mason approached him. Once Mason reached Gragg, Gragg stepped in front of him, blocking his path and pointing the taser directly at him. Mason then knocked the taser out of Gragg's hand and reached his hands up toward Gragg's head. Gragg then pulled his gun from its holster and shot Mason. Mason was taken to the hospital by ambulance where he later died from the gunshot wound.

No policy was in place at the Sheriff's Department to provide guidance in dealing with confused, disoriented, inebriated, or otherwise mentally incapacitated individuals. Had a policy been in place, Mason's death could have been avoided.

On March 31, 2021, Plaintiffs filed suit as co-administrators of the estate of Andrew John Mason in Watauga County Superior Court. The case was removed to this Court on May 4, 2021. On June 10, 2021, the Defendants all moved to dismiss Plaintiffs' claims with prejudice. On July 1, 2021, Plaintiffs amended their Complaint. As amended, the Complaint alleges six claims for relief against Watauga County Sheriff Len D. Hagaman in his official and individual capacities, and against Deputy Gragg in his official and individual capacities. On July 15, 2021 Defendants filed Motions to Dismiss the Amended Complaint (documents # 24 and 27). The first Motion was filed on behalf of Defendant Hagaman in his official and individual capacities and Defendant Gragg in his official capacity (the "Sheriff Defendants"). The other Motion was filed on behalf of Defendant Gragg in his individual capacity. Defendants move to dismiss all claims with prejudice.

As a preliminary matter, the Sheriff Defendants argue that because Plaintiffs repeatedly refer to Gragg's body camera footage in their Complaint, the Court should view that footage in connection with the Motion to Dismiss. For the reasons discussed below, the Court does not find it proper to view the footage at this stage in the proceedings.

Count 1 is brought under 42 U.S.C. § 1983. Plaintiffs allege that Gragg used excessive force against Mason in violation of clearly established law and that Hagaman should be subject to supervisory liability for this conduct. Defendants argue that there was no constitutional violation or alternatively that the individual-capacity Defendants are entitled to qualified immunity. In their § 1983 claim against the official-capacity Defendants, Plaintiffs allege, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that the deprivation of Mason's constitutional rights resulted from Watauga County Sheriff's Department policy. The Sheriff Defendants respond that Plaintiffs have not adequately alleged the existence of an underlying deprivation of rights. They also argue that even if Plaintiffs alleged an underlying deprivation of rights, they did not

sufficiently allege that the deprivation was caused by Department policy. Alternatively, they assert that at a minimum the official capacity claim against Gragg should be dismissed because it is duplicative to name more than one defendant in their official capacity in connection with a § 1983 claim against the same entity.

Counts 2 and 3 are North Carolina common law negligence claims. Plaintiffs allege that Gragg was negligent in his interaction with Mason, that Hagaman is vicariously liable for Gragg's negligence under the doctrine of *respondeat superior*, and that Hagaman and the Sheriff's Department were negligent in the hiring, retention, supervision, and training of Gragg and the other deputies. Gragg argues that the negligence claim against him is barred by Mason's contributory negligence. All Defendants argue that Counts 2 and 3 are barred by public official immunity. Likewise, with respect to Count 4—a wrongful death claim—Defendants argue that Plaintiffs failed to allege underlying tortious conduct or alternatively that this claim is barred by public official immunity.

With respect to Count 5 for punitive damages, Defendants argue that this claim does not state an independent cause of action.

Count 6 is a statutory claim on the Sheriff's Bond under N.C. Gen. Stat. § 58-76-5. The Sheriff Defendants argue that this should be denied because it first requires proof of a common law tort claim, which they aver cannot be shown in this case.

## II. Discussion

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see Priority Auto Grp., Inc. v. Ford Motor Co.*,

757 F.3d 137, 139 (4th Cir. 2014). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *see Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In *Iqbal*, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555) (alleging that government officials adopted a challenged policy "because of" its adverse effects on the protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

In *Iqbal*, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me-accusation." *Id.* at 678. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a

defendant's liability." *Id.*; *see Eastern Shore Mkts. Inc. v. J.D. Assoc.'s, LLP*, 213 F.3d 175, 180 (4th Cir. 2000) (explaining that while the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments").

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore should be dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Sons of Confederate Veterans v. City of Lexington*, 722 F.3d 224, 228 (4th Cir. 2013) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." *Neitzke*, 490 U.S. at 328; *see Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs.*, 521 F. App'x 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

### B. The Court Should Not View the Body Camera Footage at this Stage in the Proceedings

The Sheriff Defendants argue that because the Plaintiffs refer to Gragg's body camera footage in their Complaint, the Court should view that footage in connection with these Motions. Plaintiffs respond that the video footage should not be viewed out of context. Consideration of the footage would effectively transform the Motions to Dismiss into motions for summary judgment. Accordingly, the Court does not find it appropriate to view the body camera footage at this stage in the proceedings.

In support of their argument, the Sheriff Defendants cite *Zsigray v. County Commission*, 709 F. App'x 178 (4th Cir. 2018) (per curiam) (unpublished) as well as several cases from other circuits. None of those cases adequately support their position. Two of the cited cases are inapposite. In those cases, plaintiff attached the video footage to the complaint. *See Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) ("[T]he court is entitled to consider any exhibits *attached to the complaint*, including video evidence." (emphasis added)); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Bogie incorporated the video recording into her original complaint both by reference and by physically attaching the video recording to the amended complaint."). A third case did not consider the propriety of viewing the footage because no party contested "the inclusion of the videos in the Court's review of the Complaint." *Garcia v. Does*, 779 F.3d 84, 87 n.2 (2d Cir. 2015). In a fourth case, the court determined that it could permissibly view the video because it captured the whole incident and would not "distort [the court's] view of the events." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017). Finally, in *Zsigray*, the Fourth Circuit only held that it was not impermissible for the district court to view the video where it was integral to the complaint and its authenticity was not in question. *Zsigray*, 709 F. App'x at 179.

Here, Plaintiffs contend that the body camera footage does not tell the whole story. Further, they request additional briefing because the Court's view of the events would be distorted if it viewed the footage without further explanation. This Court has discretion to view the footage and does not consider it proper to do so at the motion to dismiss stage. *See Zsigray*, 709 F. App'x at 179 ("[Courts] *may* also consider [materials] incorporated into the complaint by reference . . . so long as they are integral to the complaint and authentic." (quoting *United States ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (second and third alteration in original) (emphasis added)).

### C. The Official Capacity *Monell* Claims are Duplicative

A claim brought under 42 U.S.C. § 1983 pursuant to *Monell* against a government actor in his official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Both Sheriff Hagaman and Deputy Gragg are Sheriff's Department employees. Accordingly, both claims are against the Sheriff's Department and duplicative.

Duplicative claims are subject to dismissal. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 307 n.13 (4th Cir. 2006) (holding that official capacity claims against university administrators were duplicative of claims against its Board of Governors and subject to dismissal); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (holding that official capacity § 1983 claims against school superintendent were duplicative of claims against school board and subject to dismissal). Thus, the official capacity claim against Gragg should be *dismissed*.

### D. The Motion to Dismiss Should Be Denied with Respect to the Official Capacity *Monell* Claim Against Sheriff Hagaman

A plaintiff seeking to impose liability on a municipality for the underlying constitutional or federal law torts of its employees under § 1983 must prove that some municipal "policy" or "custom" caused a deprivation of plaintiff's rights. *Monell*, 436 U.S. at 694. The plaintiff must sufficiently allege that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997). In other words, the plaintiff must allege that (1) a policy (2) caused (3) the alleged deprivation.

Plaintiffs' *Monell* claim seems to rest on two separate grounds. First, that there was no policy in place at the Sheriff's Department to provide guidance in dealing with confused, disoriented, inebriated, or otherwise mentally incapacitated individuals. Second, that Hagaman permitted a pattern of unconstitutional conduct to persist at the Sheriff's Department and that pattern of conduct was so pervasive that it rose to the level of department policy. As explained below, Plaintiffs have sufficiently alleged an underlying deprivation of rights based on Gragg's use of excessive force. The two Sheriff's Department policies are considered separately.

#### a. Plaintiffs Have Sufficiently Alleged That There Was No Policy in Place

Plaintiffs have alleged that Sheriff Hagaman and his Department have no policy in place to provide guidance in dealing with confused, disoriented, inebriated, or otherwise mentally incapacitated individuals. They further allege that Mason's death could have been avoided if the deputies had received adequate training pursuant to a department policy.

In *Buffington v. Baltimore County.*, 913 F.2d 113 (4th Cir. 1990), the Fourth Circuit held that an employer's normal practice must be insufficient to prevent the injury for a § 1983 claim to succeed. *Id.* at 117. Here, the allegation is that there was no "normal practice" at all and the deputies received no relevant training. Further, it is not a rare occurrence for deputies to be faced with confused, disoriented, inebriated, or otherwise mentally incapacitated individuals. Therefore, Plaintiffs have pled sufficient facts that, if true, establish that a Sheriff's Department policy, or rather a lack thereof, caused Mason's death.

### b. The Complaint Fails to Allege the Existence of a Pattern or Practice of Unconstitutional Conduct

The second ground for Plaintiffs' *Monell* claim is that Hagaman allowed a pattern of unconstitutional conduct at the Sheriff's Department to the extent that type of conduct became the custom or policy at the department. But only one instance of unconstitutional conduct has been alleged, namely the incident resulting in Mason's death. Plaintiffs allege several times, in a conclusory fashion, that other instances of misconduct occurred and Hagaman failed to take appropriate action, but they make no other specific allegations. Such conclusory allegations are insufficient to state a claim for failure to train. *See, e.g.*, *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)); *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 535–36 (E.D. Va. 2015) (holding that strikingly similar allegations are insufficient without more and are "conclusory because they do not contain any factual enhancement creating a reasonable inference that the allegations are true").

Plaintiffs do allege that Hagaman failed to take appropriate measures to properly address complaints leveled against Gragg prior to this shooting. But there is no other reference to any such

complaints anywhere else in the Complaint. It is not even alleged that any complaints were made, merely that Hagaman did not address them. The allegations in the Complaint are insufficient to show a pattern or practice of unconstitutional conduct at the Sheriff's Department "above the speculative level." *Twombly*, 550 U.S. at 555.

The undersigned respectfully recommends the Motion to Dismiss the *Monell* claim should be *granted* insofar as it rests on the existence of a pattern or practice of unconstitutional conduct. It should be *denied* to the extent that it rests of the lack of Sheriff's Department policy concerning dealing with mentally incapacitated individuals.

### E. The § 1983 Supervisory Liability Claim Against Hagaman Should Be Dismissed

Hagaman argues that the individual capacity claim for supervisory liability under § 1983 against him should be dismissed because (1) there was no underlying constitutional deprivation, and (2) he is entitled to qualified immunity. This claim should be dismissed, but for a different reason. Plaintiffs have failed to allege that he had actual or constructive knowledge of Gragg's conduct.

The three elements that must be established for a supervisory liability claim under § 1983 are:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal citations and quotation marks omitted).

As explained above, Plaintiffs have failed to allege that a pattern or practice of unconstitutional conduct persisted at the Sheriff's Department. On the face of the Complaint, the only knowledge, constructive or actual, that Hagaman could have had of Gragg's conduct was

from the incident resulting in Mason's death. There are no other well-plead facts in the Complaint that would give Hagaman actual or constructive knowledge of Gragg's conduct. The undersigned respectfully recommends that § 1983 individual capacity claim against Hagaman be *dismissed*.

### F. The Motion to Dismiss Should Be Denied with Respect to the § 1983 Excessive Force Claim Against Gragg

Gragg asserts two reasons why the § 1983 excessive force claim against him should be dismissed: (1) the shooting was lawful under the Fourth Amendment or (2) he is entitled to qualified immunity. The allegations in the Complaint, which must be taken as true for the purposes of this Motion to Dismiss, establish that Mason was unarmed, Gragg had no reason to believe Mason had committed a crime, and Mason posed no immediate danger to Gragg when Gragg shot him. It is clearly established that a police officer may not seize a person by shooting them if the person is unarmed and poses no danger. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("A police officer may not seize an unarmed, non-dangerous suspect by shooting him dead."); *Clem v. Corbeau*, 284 F.3d 543, 553–54 (4th Cir. 2002). The undersigned finds that Plaintiffs have pled sufficient facts that, if true, establish that the shooting was unlawful, and Gragg is not entitled to qualified immunity. Accordingly, the Motion to Dismiss this claim against Gragg in his individual capacity should be *denied*.

### G. The State Law Negligence Claims Should Be Dismissed

Defendants both raise the defense of public official immunity against the state law negligence claim. In North Carolina, a public official "may not be held personally liable for mere negligence." *Farrell v. Transylvania Cty. Bd. of Educ.*, 625 S.E.2d 128, 134 (2006) (quoting *Smith v. Hefner*, 68 S.E.2d at 783 (1952)). Though public official immunity can be overcome by allegations of corruption, malice, or that the public official acted beyond the scope of his duties, such allegations must be more than merely conclusory. *See id.* at 696–97. Here, Plaintiffs have

raised a negligence claim. By definition, this claim alleges "mere negligence." Plaintiffs cannot simultaneously argue that the Defendants acted negligently and also that they acted maliciously. Even if this exercise in mental gymnastics could be executed, Plaintiffs have only made conclusory allegations of malice. They have not made sufficient allegations to overcome public official immunity.

### H. The Motion to Dismiss Should Be Granted with Respect to the State Law Claim for Negligent Hiring, Retention, Supervision and/or Training

For the reasons discussed above with respect to the "pattern and practice" *Monell* claim and supervisory liability claim under § 1983, this claim should be dismissed. Plaintiffs' allegations amount to no more than conclusory statements. They do not plead the specific facts necessary to proceed on this cause of action.

### I. The Wrongful Death Claim Should Be Dismissed

The individual Defendants are immune from liability on the wrongful death claim for the same reasons as the negligence claims. *See Lunsford v. Renn*, 700 S.E.2d 94, 101 (2010) (affirming the trial court's grant of public official immunity against the police officer in his official capacity in a wrongful death action). The wrongful death claim against the Defendants in their official capacity should be *dismissed* because it is barred by sovereign immunity. *See id.* at 100.

### J. Count 5 Should Be Dismissed Because It States No Cause of Action

Count 5 is a claim for punitive damages. This is not an independent cause of action. The Plaintiffs have requested punitive damages as relief elsewhere in their Complaint. Accordingly, Count 5 should be *dismissed*.

### K. The Action on the Sheriff's Bond Should Not Be Dismissed

To prevail on a statutory bond claim under N.C. Gen. Stat. § 58-76-5, a plaintiff must prove each element of at least one common law tort claim. *Stafford v. Barker*, 502 S.E.2d 1, 6 (1998). Though the allegations are insufficient to overcome public official immunity, they do show that Gragg acted negligently in his interaction with Mason. Section 58-76-5 removes the Sheriff's Department "from the protective embrace of governmental immunity where, as here, the surety is added as a party to the action." *Thomas v. Sellers*, 524 S.E.2d 283, 287 (2001) (internal quotation omitted). Accordingly, the Motion to Dismiss should be *denied* with respect to this claim.

### III. Recommendation

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that the "Rule 12(b)(6) Motion to Dismiss First Amended Complaint of Defendants Sheriff Len D. Hagaman and Adam S. Gragg," Doc. 24 and the "Motion to Dismiss First Amended Complaint by Defendant Adam Shane Gragg in his Individual Capacity," Doc. 27, be **GRANTED IN PART** and **DENIED IN PART**; that is, **GRANTED** as to Counts 2, 3, 4, and 5 and as to Count 1 as against Defendant Hagaman in his individual capacity and Defendant Gragg in his official capacity and **DENIED** as to Count 6, Count 1 as against Defendant Gragg in his individual capacity, and Count 1 as against Defendant Hagaman in his official capacity in so far as the official capacity claim against Defendant Hagaman relies on the Sheriff's Department's lack of a policy providing guidance in dealing with mentally incapacitated individuals.

### IV. Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by

the District Judge. *Diamond v. Colonial Life*, 416 F.3d 310, 315–16 (4th Cir. 2005); *Wells v. Shriners Hosp.*, 109 F.3d 198, 201 (4th Cir. 1997); *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140, 147 (1985); *Diamond*, 416 F.3d at 316; *Page v. Lee*, 337 F.3d 411, 416 n.3 (4th Cir. 2003); *Wells*, 109 F.3d at 201; *Wright v. Collins*, 766 F.2d 841, 845–46 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Kenneth D. Bell.

**SO ORDERED.**

Signed: October 28, 2021

David S. Cayer
United States Magistrate Judge